**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

| | | |
|---|---|---|
| *In re Subpoena Issued to* | § | Misc. No. 2:22-mc-00069-RSL |
| *Dave's Redistricting App,* | § | |
| | | |
| REPRESENTATIVE JACEY JETTON and | § | |
| ADAM FOLTZ, | § | |
| | § | |
| *Movants,* | § | |
| | § | |
| v. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Respondent.* | § | |

**MEMORANDUM OF LAW IN SUPPORT OF**


**OPPOSED EMERGENCY MOTION TO STAY SUBPOENA;**
**UNOPPOSED MOTION TO TRANSFER TO CONSOLIDATED CASES;**
**OR IN THE ALTERNATIVE OPPOSED MOTION TO QUASH**

## TABLE OF CONTENTS

Introduction ................................................................................................................................. 1

Background ................................................................................................................................. 1

Argument .................................................................................................................................... 3

    I.   The Subpoena Should be Stayed ................................................................................. 3

    II.  This Action Should be Transferred to the Western District of Texas ...................... 4

    III. The Subpoena is Untimely ........................................................................................... 5

    IV. The Subpoena Calls for Information Subject to the Legislative Privilege .............. 5

        A.   Movants Have Standing .................................................................................... 5

        B.   The United States Cannot Circumvent Legislative Privilege by Sending a Subpoena to a Third-Party Application ................................................................................ 6

        C.   Legislative Privilege Is Not Waived ................................................................ 9

Conclusion ............................................................................................................................... 10

Certificate of Conference ........................................................................................................ 12

Certificate of Service ............................................................................................................... 12

## INTRODUCTION

The United States seeks to circumvent assertions of legislative privilege by deploying an untimely and duplicative subpoena to a disinterested nonparty. Unsatisfied with the individual subpoenas it served on Representative Jacey Jetton and Texas Legislature employee Adam Foltz, the United States attempts to gain access to a certain subset of those requested documents by subpoenaing Dave's Redistricting App, which maintains an online application that allows users to draw and analyze redistricting maps. But Movants only utilized this online tool pursuant to their official duties within the legislative branch, which means that the documents remain subject to legislative privilege. *See generally* Ex. A (declaration of Jacey Jetton); Ex. B (declaration of Adam Foltz). Allowing backdoor disclosure of such documents threatens to chill legislators from utilizing the full range of available tools and resources to aid in their performance of a core legislative function. Movants therefore seek an order quashing the United States' subpoena to Dave's. If the United States wants to challenge Movants' privilege assertions, it should have moved to compel pursuant to the individual subpoenas it served.

## BACKGROUND

During September of October of 2021, the Texas Legislature reapportioned Texas's congressional, senate, house, and State Board of Education districts. Soon after, the United States, along with several plaintiffs' groups, brought lawsuits challenging the new districts, most of which have now been consolidated before a three-judge panel. Extensive discovery has followed, including the issuance of dozens of nonparty subpoenas for documents of state legislators and legislative staff. Among those subpoenaed for documents were Texas State Representative Jacey Jetton and Adam Foltz. Ex. C; Ex. D. Both individuals have asserted various defenses in response to their individual subpoenas, including assertions of legislative privilege. Ex. E; Ex. F. Indeed, Representative Jetton and Mr. Foltz not only served objections and responses to these individual subpoenas, but also produced responsive, non-privileged documents and provided the United States with a privilege log of all documents withheld

on the basis of privilege. Ex. A ¶ 6; Ex. B ¶ 5.

On July 14, the United States served a subpoena for documents on Seattle-based Dave's Re-districting, LLC, which is not a party to any of the consolidated Texas redistricting cases. This despite the court's order that all fact discovery was required to be completed by the very next day. *See LULAC*, ECF 325. The subpoena requested the following materials from three specifically named individuals, two of whom were Representative Jetton and Mr. Foltz:

All documents and data associated with [the named individual], including but not limited to:

a. All maps and draft maps of the Texas delegation to the U.S. House of Representatives and the Texas House of Representatives drawn by [the named individual];

b. All maps and draft maps of the Texas delegation to the U.S. House of Representatives and the Texas House of Representatives uploaded by [the named individual];

c. All maps and draft maps of the Texas delegation to the U.S. House of Representatives and the Texas House of Representatives viewed by [the named individual];

d. All data relating to users and other individuals who viewed the maps and draft maps of the Texas delegation to the U.S. House of Representatives and the Texas House of Representatives drawn or uploaded by [the named individual];

e. All information and data related to analysis of maps drawn, uploaded, or viewed by [the named individual], including but not limited to racial data, other demographic data, election data, proportionality data, competitiveness data, minority representation data, and compactness data;

f. All records, including metadata, related to the use of Dave's Redistricting App by [the named individual]; and

g. Any other information concerning this user.

Ex. G. This subpoena is wholly duplicative of the individual subpoenas to which Movants have already objected and responded. In particular, those individual subpoenas requested the following:

All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or consid-ered. This request includes but is not limited to:

a. the origination(s) or source(s) of any such redistricting proposal;

b. the impetus, rationale, background, or motivation for any such redistricting proposal;

c. all drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen

Voting Age Population, Hispanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, Hispanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. the pairing of any incumbents in any such redistricting proposal;

e. any redistricting amendment, whether partial or total, to each such proposal;

f. negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

Ex. G. Every draft map potentially responsive to the Dave's subpoena was already collected and either produced or logged in response to individual subpoenas. Ex. A ¶ 6; Ex. B ¶ 5. The United States has not moved to enforce the individual subpoenas regarding the draft maps withheld based on privilege.

Counsel met and conferred with the United States on the scope of the Dave's subpoena. The United States has taken the position that it can seek Movants' documents directly from Dave's, avoiding the need to file a motion to enforce the individual subpoenas it previously served. Accordingly, Movants now move to quash the privilege-eviscerating subpoena issued to this disinterested nonparty.

## ARGUMENT

### I.    The Subpoena Should be Stayed

Movants request that the Court stay enforcement of the subpoena pending decision on the motion to quash. In the alternative, and in the event the Court determines transfer to the Western District of Texas is appropriate, Movants request that the Court administratively stay enforcement of the subpoena pending the Texas court's decision on the motion to stay.

The deadline for compliance with the Dave's Redistricting subpoena is currently August 15, 2022. Ex. H. Accordingly, Movants anticipate that this Court may be unable to rule on their motion

3

to quash before compliance is required. Movants have conferred with counsel from Dave's Redistricting, who have indicated that they plan to comply with the subpoena on August 15 if they remain legally obligated to do so. Ex. H (email). As with other instances of wrongful disclosure of non-public information, there will be no means to remedy the production of these legislatively privileged documents once they have been turned over. *Cf. DePuy Synthes Products, Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1368 (Fed. Cir. 2021) (observing that "the information in the [sealed] amended complaint, once disclosed to the public, could not be made confidential again"); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) (Kavanaugh, J.) (holding that appeal of disclosure order after final judgment "will often come too late" because "the cat is out of the bag"); *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) ("Secrecy is a one-way street: Once information is published, it cannot be made secret again."). Movants request that this Court enter an order staying compliance with the Dave's Redistricting subpoena until it has ruled on Movants' motion to quash.

## II.    This Action Should be Transferred to the Western District of Texas

A motion to quash may be transferred to the court where the underlying case is proceeding. *See, e.g., Templeton v. Bishop of Charleston*, No. 2:20-cv-1578, 2020 WL 7343036, at *2 (W.D. Wash. Dec. 14, 2020). This is appropriate where the subpoena recipient consents, or in the presence of certain "exceptional circumstances," such as when the "same issues are likely to arise" in the underlying litigation. *Id.* (quoting Fed. R. Civ. P. 45 Adv. Comm. Note). Dave's takes no position on the motion.

As explained above, the instant subpoena arises out of complex, multi-party consolidated litigation over the redistricting maps passed by the Texas Legislature. A three-judge panel has been selected and has already issued multiple discovery rulings. Trial will begin in September. Given its familiarity with the precise question at issue, as well as with other case-specific issues, transfer of the motion to quash is proper. Accordingly, Movants request that these motions be transferred to the Western District of Texas to be decided as part of the *LULAC v. Abbott* consolidated litigation.

## III.     The Subpoena is Untimely

The subpoena should be quashed for the primary reason that it is untimely. Fact discovery in the underlying case closed on July 15th, 2022, but the enforcement date on the subpoena is not until August 15th, 2022—a full month later. That the subpoena was served one day before discovery closed is irrelevant; discovery "must be completed—not merely initiated—by the discovery deadline." *Murphy v. Schaible, Russo & Company, CPAs, LLP*, No. 1:19-cv-2808, 2020 WL 12698695, at *5 (D. Colo. Nov. 20, 2020) (citing *Grant v. Otis Elevator Co.*, 199 F.R.D. 673, 675 (N.D. Okla. 2001); *Rice v. United States*, 164 F.R.D. 556, 557-59 (N.D. Okla. 1995)). As such, the subpoena to Dave's is untimely. And although third parties such as Movants do not ordinarily have standing to raise proportionality issues with respect to a subpoena, "[t]his general rule does not apply, however, when a party moves to quash a third party subpoena on the basis of its untimeliness." *Ferreira v. Penzone*, No. 2:15-cv-1845, 2018 WL 1706212, at *1 n.1 (D. Ariz. Apr. 9, 2018) (citing *Davis v. Tri-County Metro. Transp. Dist.*, No. 3:12-cv-808, 2015 WL 3823826, at *1 (D. Or. June 18, 2015) and *Rice*, 164 F.R.D. at 556-58).

## IV.     The Subpoena Calls for Information Subject to the Legislative Privilege

The Court need go no further than to determine that the subpoena should be quashed because it is untimely. But in the event the subpoena is found to be timely, it should be quashed for the additional reason that it seeks information subject to the legislative privilege.

### A.     Movants Have Standing

Rule 45 provides that a party may serve a subpoena commanding a nonparty "to whom it is directed to . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). However, a subpoena must be quashed where compliance "requires disclosure of privileged or other protected matter." *Id.* R. 45(c)(3)(A)(iii). So long as the movant possesses a "personal right or privilege with respect to the materials subpoenaed," he need not be the target of the subpoena. *Brown v. Braddick*, 595 F.2d 961,

967 (5th Cir. 1979); *see also Total RX Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 594 (N.D. Tex. 2017) (finding standing to file a motion to quash or modify under Rule 45(d)(3) if the movant "has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it.").

Representative Jacey Jetton and Adam Foltz both possess such a "personal right or privilege" with regard to the materials subpoenaed. Indeed, the Dave's Redistricting subpoena requests "[a]ll documents and data associated with" both individuals by name. Ex. H. The subpoena seeks "[a]ll maps and draft maps of the Texas delegation to the U.S. House of Representatives and the Texas House of Representatives" that were drawn, uploaded, or viewed by either individual, along with "[a]ll information and data related to analysis" of those maps. *Id.* Representative Jetton and Mr. Foltz have already objected based on legislative privilege to the United States' substantially similar request for "[a]ll drafts in the development or revision" redistricting proposals, including shapefiles and "files or datasets used in mapping software." Ex. C; Ex. D. Those objections are equally applicable here. The substantial overlap between the Dave's Redistricting subpoenas and the individual subpoenas sent to Representative Jetton and Mr. Foltz demonstrates that both individuals possess a "sufficient interest" in the requested documents to establish standing for this motion.

**B.    The United States Cannot Circumvent Legislative Privilege by Sending a Subpoena to a Third-Party Application**

Legislative privilege has long existed "to protect the integrity of the legislative process by insuring the independence of individual legislators." *United States v. Brewster*, 408 U.S. 501, 507 (1972); *see United States v. Johnson*, 383 U.S. 169, 178 (1966). In the United States, the privilege has protected some state governments for longer than the Constitution itself. *See Tenney v. Brandhove*, 341 U.S. 367, 373-75 (1951). And in Texas, the legislature has gone beyond the common law by codifying the privilege so as to better "protect the public's interest in the proper performance of the deliberative and policymaking responsibilities of the legislature and to preserve the legislative branch's independence under the fundamental principle of separation of powers." Tex. Gov't Code § 306.008(a).

This codification only adds to the already well-established common law privilege afforded to legislators and staff, which reflects the strong presumption against "judicial inquiries into legislative . . . motivation." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977). Such inquiries are disfavored because they "represent a substantial intrusion into the workings of other branches of government." *Id.*; *see also Johnson*, 383 U.S. at 179; *United States v. Helstoski*, 442 U.S. 477, 491 (1979). Regardless of the privilege's source, it remains true that "the exercise of legislative discretion should not be inhibited by judicial interference," as it is simply "'not consonant with our scheme of government for a court to inquire into the motives of legislators.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 52, 55 (1998) (quoting *Tenney*, 341 U.S. at 377); *accord Citizens Union of City of New York*, 269 F. Supp. 3d 124, 141 (S.D.N.Y. 2017) (recognizing that a "sparse legislative record . . . does not justify turning discovery into a fishing expedition . . . [or] warrant the disclosure of privileged materials").

Furthermore, as confirmed by federal and state courts alike, legislative privilege extends far beyond the individual legislators themselves. *See, e.g.*, *Veasey v. Perry*, No. 2:13-cv-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014); *see also In re Perry*, 60 S.W.3d 857, 859-60 (Tex. 2001) (applying the "fundamental separation-of-powers tenets" embodied in "the Texas and federal constitutions" and "extend[ing] the legislative immunity doctrine beyond federal and state legislators to other individuals performing legitimate legislative functions" to prevent discovery); *Clear Lake City Water Auth. v. Salazar*, 781 S.W.2d 347, 348 (Tex. App.—Houston [14th Dist.] 1989) (no writ) (preventing discovery from local legislators); *accord Gravel v. United States*, 408 U.S. 606, 618 (1972) (federal privilege "applies not only to a Member, but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself"); *see also Doe v. McMillan*, 412 U.S. 306, 312 & n.7 (1973) (rejecting argument that congressional committee staff and a congressional consultant were beyond the scope of federal privilege). Again, Texas makes the privilege's extension to nonlegislators employees, like Mr. Foltz, explicit by statute. Tex. Gov't Code § 306.008(a).

Legislative privilege is thus indispensable to the proper functioning of Texas's government. Despite this crucial role, however, the United States seeks to make an end-run around legislative privilege by subpoenaing a third-party online service that was utilized by certain legislators and legislative staff for a distinctly legislative purpose. Ex. A ¶ 4; Ex. B ¶ 3. It specifically seeks documents and information related to redistricting software, research, and mapping data, even though such data is protected by legislative privilege because it inherently reveals the thoughts and mental impressions of the legislator that viewed or created it. *See N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) (noting that the "mental process privilege" has often been applied in the "legislative context"); *In re TXU Elec. Co.*, No. 05-cv-489, 2001 WL 688128, at *1 (Tex. App.—Dallas June 20, 2001, orig. proceeding) ("Legislative privilege protects elected officials from judicial interrogation about their subjective mental processes in enacting legislation."). If legislative privilege is to have any teeth, this attempt to circumvent the privileged nature of documents by sending a duplicative subpoena to Dave's Redistricting must fail.

Again, movants already invoked legislative privilege when such documents were sought from them directly. Not only that, but movants have also produced all relevant, non-privileged documents in response to those individual subpoenas, with Mr. Foltz producing approximately 300 pages of documents and Representative Jetton producing approximately 180 pages of documents. Movants have also already included every privileged document held by Dave's Redistricting in a privilege log served on the United States. Ex. A ¶ 4; Ex. B ¶ 5. To be clear, Dave's Redistricting does not have access to a single responsive document that has not already been either produced or logged for the United States. Movants are left to conclude that the United States' sole purpose for issuing the Dave's Redistricting subpoena is to obtain their privileged materials without having to litigate the matter of privilege itself.

If successful, the United States will have established an exception to legislative privilege that swallows the rule. By bypassing legislators and legislative staff, the Dave's Redistricting subpoena

leaves it to a disinterested third party to litigate on behalf of legislators' privileges and defenses. Allowing the United States to offload the burden of litigation onto those who stand to realize no benefit from litigating would severely prejudice Movants. Dave's Redistricting simply does not have the same interests as Representative Jetton and Mr. Foltz and cannot be expected to vigorously defend privileges that are not its own. Finding otherwise would be little different from allowing, for example, a plaintiff to subpoena an internet service provider for all emails between a defense attorney and his client. Here, as there, the law should not countenance such a result.

If the United States disagrees with Movants' invocation of legislative privilege, the proper course is to litigate the privilege issues as part of a motion to compel documents from the individual subpoena recipients. After all, the applicable privilege belongs to those individuals, and they are thus best positioned to advocate for the privilege's application. *See Martin v. Crestline Hotels & Resorts, LLC*, No. 1:19-cv-470, 2020 WL 3145694, at *3 (W.D. Tex. June 12, 2020) (quashing subpoena and rejecting as contrary to the patient-physician privilege a subpoena seeking "the medical information of non-parties who have not waived their patient-physician privileges in this case," which belonged to the non-party patients themselves and not patients' insurance carrier); *Hall v. Louisiana*, No. 3:12-cv-657, 2014 WL 1652791, at *4 (M.D. La. Apr. 23, 2014) (quashing third-party subpoena for privileged information and explaining that "attorney-client privilege is held by the clients, not [subpoena recipient], and [subpoena recipient] is without authority to waive it").

## C.    Legislative Privilege Is Not Waived

The documents sought are privileged because they relate to the Legislature's indisputably legislative act of crafting redistricting legislation, regardless of whether the United States seeks them directly from Movants or indirectly from Dave's Redistricting app. *See Bogan*, 523 U.S. at 55-56 (activity is "legislative" when it is part of a "discretionary, policymaking decision" or involves "a field where legislators traditionally have power to act"); *Brewster*, 408 U.S. at 512 ("A legislative act has consistently

been defined as an act generally done in Congress in relation to the business before it."). However, the United States explained in conference that it takes the position that Movants waived the privilege by using a third-party application. That argument misses the mark because it focuses on *who* was involved rather than *what* purpose Movants sought to accomplish. Movants engaged with Dave's Redistricting as a means of pursuing the inherently legislative activity of beginning to formulate a redistricting map. Ex. A ¶ 1-4; Ex. B 1-3. Because this engagement was part-and-parcel to the legislative process itself, it does not waive legislative privilege. *See Cole v. Gray*, 638 F.2d 804, 811 (5th Cir. 1981) (holding that the privilege attaches to all "legitimate legislative activities," meaning any action taken within the course of the "legislative process itself."); *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015) ("The privilege protects the legislative process itself, and therefore covers both governors' and legislators' actions in the proposal, formulation, and passage of legislation."); *In re Perry*, 60 S.W.3d at 858 (extending privilege to the Legislative Redistricting Board that was "acting in a legislative capacity").

## CONCLUSION

The documents and information implicated by the Dave's Redistricting subpoena must instead be sought from the individual custodians—as the United States has already done. The United States cannot circumvent the legislative privilege invoked by these individual subpoena recipients by seeking the same documents from a company that hosts an online redistricting app. The same privilege that bars the United States from obtaining these privileged documents from individual legislators or legislative staff also bars the United States from seeking the same from Dave's Redistricting. Movants therefore respectfully request an order quashing the Dave's Redistricting subpoena, as well as an order staying the deadline for Dave's Redistricting to comply with the subpoena until this Court has ruled on the motion to quash. In the alternative, Movants seek transfer of the motion to quash, motion for stay, or both to the three-judge panel of the Western District of Texas that has been assigned to hear the consolidated Texas redistricting litigation.

Date: August 12, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

BRENT WEBSTER
First Assistant Attorney General

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

/s/ Jack DiSorbo
JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24120804

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
jack.disorbo@oag.texas.gov

**COUNSEL FOR DEFENDANTS, REPRESENTATIVE JACEY JETTON AND ADAM FOLTZ**

TAYLOR A.R. MEEHAN
FRANK H. CHANG
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, Virginia 22209
(703) 243-9423
taylor@consovoymccarthy.com
frank@consovoymccarthy.com

ADAM K. MORTARA
LAWFAIR LLC
125 South Wacker, Suite 300
Chicago, IL 60606
(773) 750-7154
mortara@lawfairllc.com

**COUNSEL FOR REPRESENTATIVE JACEY JETTON AND ADAM FOLTZ**

### CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for the United States and counsel for Dave's Redistricting App regarding the issues presented by these motions. Dave's takes no position on the motion to quash or on the motion to stay. It did not advise a position on the motion to transfer. The United States opposes the motion to quash and motion to stay. It consents to the motion to transfer.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN

/s/ Jack DiSorbo
JACK B. DISORBO

### CERTIFICATE OF SERVICE

I certify that on August 12th I served this motion on all counsel for the United States and counsel for Dave's Redistricting App by email.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN

/s/ Jack DiSorbo
JACK B. DISORBO